D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
CENTER FOR POPULAR DEMOCRACY,

                    Plaintiff,

      -against-

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

                    Defendant.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**16-CV-5829 (NGG) (SMG)**

      Plaintiff Center for Popular Democracy brings this action pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 et seq. (Compl. (Dkt. 1).) Plaintiff alleges that

Defendant the Board of Governors of the Federal Reserve System (the "Board of Governors" or

the "Board") failed to release documents responsive to Plaintiff's FOIA request. The parties

now cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Def.

Mot. for Summ. J. ("Def. Mot.") (Dkt. 40); Pl. Mot. for Summ. J. ("Pl. Mot.") (Dkt. 41).) For

the following reasons, Defendant's motion for summary judgment is GRANTED IN PART and

DENIED IN PART, and Plaintiff's motion for summary judgment is GRANTED IN PART and

DENIED IN PART.

## I.    BACKGROUND

###     A.    Factual Background

      Plaintiff is a non-profit organization focused on economic and racial justice. (Compl.

¶ 4.) Plaintiff organizes and directs the national "Fed Up" campaign, the mission of which is to

make the Federal Reserve more representative of the public and to encourage the Federal

Reserve to adopt pro-worker economic policies. (Id.)

The Federal Reserve System (the "Federal Reserve") is the central bank of the United States. (Id. ¶ 6.) The Federal Reserve consists of Defendant Board of Governors, located in Washington, D.C.; and twelve Federal Reserve Banks ("Reserve Banks"), located in Boston, New York, Philadelphia, Cleveland, Richmond, Atlanta, Chicago, St. Louis, Minneapolis, Kansas City, Dallas, and San Francisco. (Id.) The Board of Governors and the Reserve Banks share responsibility for supervising and regulating certain financial institutions and activities. (Id.) Each of the Reserve Banks is responsible for supervising and regulating member banks and bank holding companies within a particular geographic area, or District, of the United States. (Id.)

The Board of Governors is comprised of a chair and six members, each of whom are appointed by the President of the United States and confirmed by the United States Senate. (Id. ¶ 6). Each of the twelve Reserve Banks is led by a president and a nine-member board of directors. (Id. ¶ 9.) Each Reserve Bank president is appointed by the board of directors of that bank, subject to the Board of Governors' approval. (Id. ¶ 8.) Reserve Bank presidents serve for a term of five years, subject to mandatory retirement at age 65, and are eligible for reappointment. (Id.) The terms of all twelve Reserve Bank presidents run concurrently, ending on the last day of February of years ending in the digits 6 or 1. (Id.) A Reserve Bank president who is appointed after a term has already begun serves until completion of that term. (Id.)

Each Reserve Bank's board of directors is comprised of three classes of directors: Class A, Class B, and Class C. (Id. ¶ 9.) The three Class A and three Class B directors are elected by the stockholding member banks in the District. (Id. (citing 12 U.S.C. §§302, 304).) The three Class C directors are appointed by the Board of Governors. (Id.) By statute, the three Class A directors are to represent the interests of the stockholding member banks in the District, and the

three Class B and three Class C directors are to represent the interests of the public, "with due but not exclusive consideration to the interests of agriculture, commerce, industry, services, labor, and consumers." (Id. (quoting 12 U.S.C. §302).)

## B.     The FOIA Request and Procedural History

On August 5, 2016, Plaintiff submitted a FOIA request (the "FOIA Request") to the Board of Governors seeking several categories of documents. (Pl. 56.1 Statement ("Pl. 56.1") ¶ 1; Def. 56.1 Statement ("Def. 56.1") ¶ 1.) The FOIA Request sought the following categories of information:

- Records relating to the Board of Governors' reappointment of ten Reserve Bank presidents in February 2016 (see FOIA Request (Dkt. 40-5) at 7-20);

- Records relating to the Board of Governors' policies, procedures, guidelines, and practices regarding nomination, appointment, review, and reappointment of Reserve Bank presidents (id. at 21-22);

- Records relating to the Board of Governors' policies, procedures, guidelines, and practices regarding its oversight of the nomination and election of Class A and Class B Directors of the Reserve Banks (id. at 22-23);

- Records relating to the Board of Governors' policies, procedures, guidelines, and practices regarding appointment of Class C Directors of the Reserve Banks (id. at 23-24); and

- Records relating to the Board of Governors' policies and practices regarding promoting diversity among the Federal Reserve's leadership (id. at 24-26).

Following the receipt of the FOIA Request, Defendant extended its time to respond by the statutory maximum of 10 days, to September 19, 2016, but failed to provide a response by

that date. (Pl. 56.1 ¶ 7.) On October 19, 2016, Plaintiff filed the instant action, seeking to compel the production of the requested records. (Id. ¶ 9.) The Board provided three interim responses to the FOIA Request, accompanied by responsive documents, on November 22, 2016, December 13, 2016, and February 8, 2017. (Id. ¶ 10.) On March 10, 2017, Defendant provided its "final response," granting in part and denying in part the FOIA Request, along with additional responsive documents and a request for clarification of Part VI, subparts 5, 6, 7 and 8 of the FOIA Request. (Id. ¶ 11.) On April 7, 2017, Plaintiff provided clarification to Defendant. (Id. ¶ 12.) On February 8, 2018, Defendant produced an additional 562 pages of documents responsive to Part VI, subparts 5, 6, 7 and 8 of the FOIA Request. (Id. ¶ 13.)

C.    Instant Motions for Summary Judgment

On August 25, 2017, the parties sought leave from the court to file motions for summary judgment. (Joint Letter re: Summary Judgment (Dkt. 21).) The court granted the parties leave to cross-move for summary judgment and set a briefing schedule. (See Oct. 12, 2017 Min. Entry.) The motions were fully briefed and filed with the court on June 13, 2018. (See Dkts. 40-43.)

Defendant contends that it is entitled to summary judgment on the grounds that it conducted an adequate search and provided all reasonably segregable, non-exempt responsive information to Plaintiff. (See Def. Mem. at 1.) Plaintiff disputes that Defendant's search was adequate and cross-moves for summary judgment. (See Pl. Mot.) Plaintiff asks the court to order Defendant to conduct the following searches and produce the results thereof:

- Search for all annual assessments of Reserve Bank presidents, all "Annotated Bank Evaluations summaries" by the Board of Governor's Committee on Federal Reserve Bank Affairs ("BAC") or similar documents, all meeting minutes or similar documents memorializing annual discussions between the BAC and

4

Reserve Bank chairs and deputy chairs regarding Reserve Bank presidents'
performance, and all documents relating to the foregoing (Pl. Mot. at 2);

- Search the calendars, emails, and other files of all members of the Board of
Governors who held office between 2010 and 2016, using at least the following
keyword search terms: the names of the Reserve Bank presidents; the names of
the Reserve Bank chairs; the names of the search firms retained by each Reserve
Bank to assist with the reappointment process; the names of any other Reserve
Bank presidential candidates; "appointment"; "reappointment"; "president"; and
"director" (id.); and

- Search all agency records at the Reserve Banks for responsive documents (id.).

## II.    LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions show that there is "no
genuine dispute as to any material fact," and that the movant is therefore "entitled to judgment as
matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to
a material fact." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "Once the moving
party has met this burden, the party opposing summary judgment must identify specific facts and
affirmative evidence that contradict those offered by the moving party to demonstrate that there
is a genuine issue for trial." Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 349 (E.D.N.Y.
2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). The non-moving party "must
offer some hard evidence," not merely speculation, "showing that [its] version of the events is
not wholly fanciful." Id. (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)).
The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-

moving party. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010). Where two parties

make cross-motions for summary judgment, "each party's motion must be examined on its own

merits, and in each case all reasonable inferences must be drawn against the party whose motion

is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)

(citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

 "Summary judgment is the preferred procedural vehicle for resolving FOIA disputes."

Labella v. Fed. Bureau of Investigation, No. 11-CV-23 (NGG), 2012 WL 948567, at *6

(E.D.N.Y. Mar. 19, 2012) (citation omitted). To secure summary judgment in a FOIA case, the

defendant agency must show that it conducted an adequate search and that any withheld

documents fall within a FOIA exemption. See Adamowicz v. I.R.S., 402 F. App'x 648, 650 (2d

Cir. 2010) (summary order); Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

An agency conducts an adequate search where its search is "reasonably designed to identify and

locate responsive documents." Davis v. U.S. Dep't of Homeland Sec., No. 11-CV-203 (ARR),

2013 WL 3288418, at *6 (E.D.N.Y. June 27, 2013) (quoting Garcia v. U.S. Dep't of Justice,

Office of Info. & Privacy, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002)); Sussman v. U.S. Dep't of

Justice, No. 03-CV-3618 (DRH), 2006 WL 2850608, at *10 (E.D.N.Y. Sept. 30, 2006) (The

adequacy of a search turns on "whether the agency's search was reasonably calculated to

discover the requested documents.") (citation omitted). An agency is "not expected to take

extraordinary measures to find the requested records," nor is it obligated to "search every record

system" or use "all possible variants of a particular name or search term." Conti v. U.S. Dep't of

Homeland Sec., No. 12-CV-5827 (AT), 2014 WL 1274517, at **11, 15 (S.D.N.Y. Mar. 24,

2014) (citations omitted). Although one location may be the "most likely" to turn up records,

"the agency cannot limit its search to only one record system if there are others that are likely to

turn up the information requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Similarly, the agency cannot satisfy its FOIA obligations simply by searching only the files of the custodians "'most likely' to have responsive records," Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency, 877 F. Supp. 2d 87, 98 (S.D.N.Y. 2012), rather, it must search "all custodians who were reasonably likely to possess responsive documents," id. at 96 (citing Banks v. U.S. Dep't of Justice, 700 F. Supp. 2d 9, 15 (D.D.C. 2010)); see id. at 97-98, 101-02 (agency unreasonably failed to search certain offices and custodians despite evidence that they were involved in discussions relevant to the request). "[I]f a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." Valencia-Lecena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (quotation marks and citations omitted).

Agency affidavits describing the underlying searches are "accorded a presumption of good faith." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (quoting Carney, 19 F.3d at 812). Summary judgment in an agency's favor, based on its submissions, is "inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.'" Nat'l Day Laborer Org. Network, 877 F. Supp. 2d at 96 (quoting Exxon Corp. v. Fed. Trade Comm'n, 466 F. Supp. 1088, 1094 (D.D.C. 1978)). Plaintiffs can defeat summary judgment in the agency's favor by raising "tangible evidence" that the agency's search was not complete. Carney, 19 F.3d at 812. Plaintiffs must provide specific evidence about a search's inadequacy; "purely speculative claims about the existence and discoverability of other documents" are not enough. Adamowicz, 402

Fed. App'x at 650 (quoting Grand Cent. P'ship, Inc., 166 F.3d at 489). A district court that finds

a search to be inadequate may direct the defendant to conduct additional searches. See, e.g.,

Immigrant Def. Project v. U.S. Immigration, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016); Nat'l

Day Laborer Org. Network, 877 F. Supp. 2d at 112.

## III.    DISCUSSION

### A.    Adequacy of Search

Defendant argues that it is entitled to summary judgment and dismissal of this action

because it properly responded to the FOIA Request after having conducted an adequate search

for responsive records. (Def. Mem. at 1.) In support its motion, Defendant submits two

declarations from David G. Caperton, Special Counsel for Oversight Reviews in the Legal

Division of the Board of Governors, one dated May 16, 2017 (the "First Caperton Declaration")

and the other dated July 20, 2017 (the "Supplemental Caperton Declaration, and together with

the First Caperton Declaration, the "Caperton Declarations"). (See May 16, 2017 Decl. of David

G. Caperton ("First Caperton Decl.") (Dkt. 40-4); July 20, 2017 Decl. of David G. Caperton

("Suppl. Caperton Decl.") (Dkt. 40-12).) The First Caperton Declaration describes how

Caperton supervised a team of four lawyers and a paralegal, each of whom had experience

processing FOIA requests, in searching for and reviewing potentially responsive information

over a period of seven months. (First Caperton Decl. ¶ 21.) He explains that his team consulted

with "subject matter experts on the broad topics covered by the FOIA Request" in three divisions

and three offices of the Board of Governors, gathered a wide range of information, reviewed that

information, and used it to identify other individuals who might have potentially responsive

documents. (Id. ¶¶ 21-22.) He describes the searches that he and his team undertook, and

explains that they "followed up on every lead that these [subject-matter] experts offered" and

ultimately "concluded that [they] had identified and contacted the most likely sources of responsive records and [] considered it unlikely that responsive records were located in other divisions or offices of the Board." (Id. ¶ 22.) The Supplemental Caperton Declaration contains additional information regarding the search, including why the emails of Governor Brainard and the files of the Reserve Banks were not searched. (Suppl. Caperton Decl. ¶¶ 2-7.)

Plaintiff disputes the adequacy of Defendant's search on four grounds: (1) Defendant improperly narrowed the scope of Plaintiff's request when it chose to conduct limited email searches of only three members of the Board of Governors; (2) Defendant used unreasonably narrow search terms, ignoring obvious keywords from Plaintiff's request; (3) Defendant improperly failed to search agency records held at the twelve Reserve Banks ; and (4) Defendant failed to pursue clear leads, appearing on the face of responsive documents, identifying additional responsive documents specifically requested by Plaintiff. (Pl. Mem. at 2.)

For the following reasons, the court finds that Defendant's search was inadequate in several of the respects identified by the Plaintiff and orders Defendant to undertake certain additional searches.

### 1. Records in the "Office of Board Members"

Defendant identified the "Office of Board Members" as one of the Board offices most likely to have responsive records. (See Pl. Mem. at 15 (citing First Caperton Decl. ¶ 28).) Plaintiff contends that Defendant's search of this office was inadequate in two respects. First, Defendant searched only the records of Chair Jerome Powell, former Chair Janet Yellen, and Former Vice Chairman Donald Kohn for the periods of time during which each individual served as Chair of the BAC (Pl. Mem. at 15 (quoting First Caperton Decl. ¶¶ 28, 45; Suppl. Caperton Decl. ¶ 4)), despite Plaintiff's request for records in the possession or control of "any member(s)

of the Board" (id. (quoting FOIA Request, Part II(g), (h), (i), (m), (n))), and despite documents that, according to Plaintiff, show that all members of the Board of Governors are involved in the Reserve Bank presidential reappointment process—not just the BAC Chairs. (Pl. Mem. at 16.) Second, Plaintiff argues that in searching the e-mails of these three BAC Chairs, the Board unreasonably limited the keywords it used to locate responsive records. (Id. at 19-22.) The court reviews each of Plaintiff's arguments in turn.

a.    *Records of Members of the Board of Governors*

In its FOIA Request, Plaintiff sought responsive records of all members of the Board of Governors. (See FOIA Request, Part II, subparts (g), (h), (i), (m), (n).) Plaintiff argues that Defendant's search was inadequate in that Defendant searched only the records of the three members who chaired the BAC—Governor Powell, former Chair Yellen, and former Vice Chair Kohn—as opposed to the records of all members of the Board of Governors. (Pl. Mem. at 15.)

Defendant contends that its search was appropriate because "responsive records were most likely to be located in the emails of BAC chairs, because '[a]mong other things, the BAC advises the Board with regard to Reserve Bank president appointments and reappointments.'" (Def. Mem. in Opp'n to Pl. Mot. & in Further Supp. of Def. Mot. ("Def. Opp'n") at 13 (quoting Caperton Decl. ¶ 24).) As an initial matter, the court notes that an agency may not limit its search to locations "most likely" to contain responsive documents, see Schwartz v. Dep't of Def., 2017 WL 78482, at *7 (E.D.N.Y. Jan. 6, 2017), but must instead search any locations "reasonably likely" to contain responsive records, Nat'l Day Laborer Org. Network, 877 F. Supp. 2d at 98. However, Defendant argues that responsive records were "unlikely" to be located in the emails and records of other Board of Governors members because "'[t]he purpose of creating a BAC . . . is to distribute duties among the members . . . it goes against common sense to

10

assume that all Board members would communicate with Reserve Bank boards about president appointments and reappointments, when those duties have specifically been delegated to the BAC.'" (Def. Opp'n at 13 (quoting Suppl. Caperton Decl. ¶ 4).) Defendant also states that "staff knowledgeable about the process of appointing and reappointing Reserve Bank presidents confirmed [to Mr. Capterton] that the flow of communication on such matters goes through the Chair of the BAC." (Id. at 13-14 (quoting Suppl. Caperton Decl. ¶ 4) (emphasis and alterations in original).) Defendant further justifies its decision not to search the emails and records of the other current member of the BAC, Governor Brainard, on the grounds that a staff member who works for Governor Brainard stated that "he did not think it was likely that she would have responsive documents or emails." (Id. at 14.)

The court is not convinced. First, the FOIA Request sought "all records" concerning the reappointment of Reserve Bank presidents, and not solely "communications" between members of the Board of Governors and the Reserve Bank boards. (See Pl. Mem. at 17.) Second, the Board of Governors' statutory mandate and documents already produced in response to the FOIA Request indicate that all members of the Board of Governors are involved in the selection and appointment or reappointment of Reserve Bank presidents. (See Pl. Mem. at 17-18; Pl. Reply at 12-15.)

Although the BAC may be the primary entity handling communications between the Board of Governors and the Reserve Banks about presidential appointments and reappointments, the Federal Reserve Act explicitly tasks the entire Board of Governors—not the BAC—with approving Reserve Bank presidents. See 12 U.S.C. § 341. In addition, the court agrees that several of the documents already produced by Defendant in response to the FOIA Request indicate that other members of the Board of Governors are "reasonably likely" to have

responsive documents, notwithstanding the opinions by certain staff members cited by Defendant. (See Pl. Reply at 12-13.) Among other documents, Plaintiff points to the Board of Governors' Frequently Asked Questions section of its website, which explains that the entire Board of Governors, not just the BAC chair, "reviews the Reserve Bank directors' assessment of their president's performance" and considers "any additional perspectives from members of the Board of Governors." (Pl. Reply at 12-13 (quoting Board of Governors Current FAQs (Dkt. 41-4, Ex. 4)).) Plaintiff also cites a February 11, 2016 memorandum forwarded by BAC Chair Powell to other Board of Governors members to "provid[e] context for the [Board of Governors'] consideration of the reappointment of the incumbent Reserve Bank presidents and vice presidents." (Pl. Reply at 13 (quoting Feb. 11, 2016 Powell Memo (Dkt. 40-14)); see also Feb. 18, 2016 Frierson Email (Dkt. 41-4, Ex. 5) (email from Bob Frierson to Janet Yellen and Jerome Powell, cc'ing others, attaching information for the Board's Feb. 19, 2016 meeting on Reserve Bank presidential reappointments); Summ. of Feb. 19, 2016 Board of Governors' Meeting (Dkt. 14-4, Ex. 6) (summary of meeting attended by then-Chair Yellen, Vice Chair Fischer, and Governors Tarullo, Powell, and Brainard, indicating that staff presented information to the Board of Governors on the reappointments); Feb. 19, 2016 Board of Governors' Vote (Dkt. 14-4, Ex. 7) (recording of Board of Governors' vote on reappointments).)

Accordingly, the court finds that Defendant's failure to search the emails and records of all members of the Board of Governors renders its search inadequate. Defendant is ordered to search the documents of all members of the Board of Governors from the relevant period for responsive documents.

### b. *Inadequate Search Terms*

Plaintiff further contends that, in addition to Defendant's failure to search the records of all relevant custodians, Defendant used inadequate search terms in conducting its search of the three BAC chairs' emails. (See Pl. Mem. at 19-22; Pl. Reply at 15-18.)

"An agency's declaration about a search must reasonably explain why it selected certain search terms and rejected obvious alternatives." The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affairs, 254 F. Supp. 3d 341, 356 (D. Conn. 2017). When evaluating the search terms used by an agency, the proper inquiry is "whether the search appears designed to return all relevant records." Immigrant Def. Project, 208 F. Supp. 3d at 527. "Though an [] agency is not required to search for all possible variants of a particular name or term, it must use search terms reasonably calculated to yield responsive records." Schwartz, 2017 WL 78482 at *9 (quotation marks and citation omitted).

Here, although the FOIA Request sought all communications between the Board of Governors, on the one hand, and any Reserve Bank director, Reserve Bank president, presidential candidate, or third-party search firm, on the other, among other documents (see FOIA Request Part II(p)-(r)), Defendant searched only the BAC Chairs' emails "using as search terms the email addresses of the individuals who served as Reserve Bank board Chairman during [the applicable] time, along with a search using the email addresses of the Reserve Bank board Chair's assistants" (First Caperton Decl. ¶ 45; see Suppl. Caperton Decl. ¶ 13.10). Defendant did not use keyword searches or search for the names or e-mail addresses of all relevant individuals, such as the names and email addresses of Reserve Bank presidents, the names of Reserve Bank chairs, the names of search firms retained by each Reserve Bank to assist with

Reserve Bank presidential appointments, and the names of other presidential candidates. (See Pl. Mem. at 20.)

Defendant argues that because a review of the documents turned up as a result of this limited search "did not uncover any responsive documents in addition to what [Defendant] had already located, it is pure speculation on plaintiff's part to insist that use of different search terms would have unearthed additional responsive information." (Def. Opp'n at 18.) However, the fact that the circumscribed search Defendant performed turned up responsive, but previously discovered, material does not relieve Defendant of its burden to design a search calculated "to return all relevant records." Immigrant Def. Project, 208 F. Supp. 3d at 527.

Defendant also contends that the search terms suggested by Plaintiff could yield a large number of false positives and burden the Board. (Def. Opp'n at 18.) However, "[i]t is the agency who bears the burden of demonstrating that responding to a request would be unreasonably burdensome." Nat'l Day Labor Org. Network v. U.S. Immigration & Customs Enf't Agency, No. 16-CV-387 (KBF), 2017 WL 1494513, at *11 (S.D.N.Y. April 19, 2017). By providing only speculation as to the potential burden of using additional and broader search terms, Defendant has not met its burden of showing that the use of additional and obvious search terms would be unreasonable.

The court therefore finds that the search terms used by Defendant were inadequately designed to return all responsive records, and that Defendant has not shown that expanding the search would be unreasonably burdensome. Defendant must expand the search terms used to search emails and other records to include obvious alternative search terms, including keywords and the names or e-mail addresses of all relevant individuals, or provide sufficient explanations as to why particular proposed searches would constitute an unreasonable burden.

2. <u>Records Held at Reserve Banks</u>

Plaintiff also contends that Defendant's search for responsive documents was inadequate because Defendant unreasonably failed to search <u>any</u> agency records—i.e., Board of Governors' records subject to the FOIA Request—maintained at Reserve Banks. (<u>See</u> Pl. Mem. at 22; Pl. Reply at 18.)

In responding to a FOIA request, an agency such as the Board of Governors must search for and disclose all responsive "agency records," including agency records located at the Reserve Banks. <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys.</u>, 601 F.3d 158, 160 (2d Cir. 2010). "Materials are agency records under FOIA if: (1) the agency created or obtained the relevant records, and (2) the agency is in control of the documents at the time of the FOIA request." <u>Fox News Network</u>, 601 F.3d at 160 (citing <u>U.S. Dep't of Justice v. Tax Analysts</u>, 492 U.S. 136, 144-45 (1989)). Under the Board of Governors' FOIA regulations, "[t]he Secretary of the Board . . . is the official custodian of all Board records, including records that are in the possession or control of the Board, any Federal Reserve Bank, or any Board or Reserve Bank employee." 12 C.F.R. § 261.3(a). "[R]ecords of the Federal Reserve Banks become records of the Board when they are created pursuant to the 'performance of functions for or on behalf of the Board' or when they 'are maintained for administrative reasons in the regular course of business in official files in any division or office of the Board or any Federal Reserve Bank in connection with the transaction of any official business.'" <u>Fox News</u>, 601 F.3d at 161 (quoting 12 C.F.R. § 261.2(i)(1)(i)-(ii)).[1] "So long as

---

[1] "Records of the Board include . . . all information coming into the possession and under the control of the Board, any Board member, any Federal Reserve Bank, or any officer, employee, or agent of the Board or of any Federal Reserve Bank, in the performance of functions for or on behalf of the Board that constitute part of the Board's official files; or [records] [t]hat are maintained for administrative reasons in the regular course of business in official

records at the [Federal Reserve Banks] satisfy the plain language meaning of 12 C.F.R. § 261.2(i)(1), they qualify as agency records of the Board and are subject to FOIA requests." Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys., 649 F. Supp. 2d 262, 274 (S.D.N.Y. 2009), aff'd, 601 F.3d 143 (2d Cir. 2010).

Defendant contends that its choice not to search the Federal Reserve banks for responsive records is justified for two reasons. First, Defendant argues that records relating to the assessment and appointment of Reserve Bank presidents, which would be responsive to Part II of the FOIA Request, are not "agency records." (See Def. Opp'n at 19.) Second, Defendant contends that, to the extent that certain documents were housed at the Reserve Banks for administrative reasons and therefore do constitute "agency records," those documents were unlikely to contain information responsive to Parts IV and V of the FOIA Request. (See id.) The court considers each argument in turn.

　　　　a.　　Records Relating to Assessment and Appointment of Reserve Bank Presidents

Defendant argues that it does not need to search the Reserve Banks for responsive records because "annual assessment of Reserve Bank presidents' performance," which Plaintiff sought under Part II(a) and (b) of the FOIA Request, "would necessarily be created in connection with the Reserve Banks' independent statutory grant of authority" to appoint their presidents, and thus would not qualify as Board records. (See Suppl. Caperton Decl. ¶ 6.) However, records at Reserve Banks need not relate to an agency's delegated authority—as opposed to an independent grant of authority—in order to constitute "agency records" for FOIA purposes. See Fox News

---

files in any division or office of the Board or any Federal Reserve Bank in connection with the transaction of any official business." 12 C.F.R. § 261.2(i)(1)(i-ii).

Network, LLC, 601 F.3d at 162 (rejecting Board of Governors' argument that records located at a Reserve Bank and "maintained for administrative reasons in the regular course of business" must also be created under delegated authority in order to constitute agency records for purposes of FOIA); Bloomberg, 649 F. Supp. 2d at 274 (holding that 12 C.F.R. § 261.2(i)(1) provides that certain records of the twelve Reserve Banks are records of the Board of Governors and those records must be searched).[2] Instead, the question is whether such records "satisfy the plain language meaning of 12 C.F.R. § 261.2(i)(1)," see Bloomberg, 649 F. Supp. 2d at 274, i.e., whether "they are created prsuant to the 'performance of functions for or on behalf of the Board' or . . . 'are maintained for administrative reasons in the regular course of business in official files in any division or office of the Board or any Federal Reserve Bank in connection with the transaction of any official business,'" Fox News, 601 F.3d at 161 (quoting 12 C.F.R. § 261.2(i)(1)(i)-(ii)).

The court agrees with Plaintiff that records relating to the presidential appointment process and assessments of presidential performance would constitute agency records under both subsections (i) and (ii) of 12 C.F.R. § 261(i)(1). (See Pl. Mem. at 23-24; Pl. Reply at 18-22.)

First, such records would constitute "information coming into the possession and under the control of . . . any Federal Reserve Bank . . . in the performance of functions for . . . the Board." See 12 C.F.R. § 261(i)(1)(i). While each Reserve Bank is authorized to appoint a president, such appointments are subject to "the approval of the Board of Governors" and the

---

[2] Defendant submitted a declaration stating that "[b]y longstanding interpretation, only records at Federal Reserve Banks of activities performed under Board-delegated authority, and a very small category of records maintained 'for administrative reasons' at Federal Reserve Banks, which would not include records responsive to the FOIA Request, are 'records of the Board' for FOIA purposes." (Suppl. Caperton Decl. ¶ 6.) As in Fox News Nework, LLC, however, Defendant cites no written or published expression of this internal policy or interpretation or any prior application of it, and "[i]t is therefore uncertain how much deference it commands or deserves." See Fox News Network, LLC, 601 F.3d at 161.

Board of Governors requires each Reserve Bank to assess its president's performance in seeking the Board of Governors' approval of its decision. (See Board of Governors Current FAQs.) See 12 U.S.C. § 341. Accordingly, the Board of Governors' Federal Reserve Administrative Manual directs each Reserve Bank board to "evaluate its president's performance annually," and to discuss that annual assessment with the Board of Governors "during Reserve Bank evaluation meetings between the members of the Committee on Federal Reserve Bank Affairs and the Reserve Bank's chairman and deputy chairman." (Federal Reserve Administrative Manual ("FRAM") (Dkt. 41-4, Ex. 3).) Plaintiff reasons that records created and maintained by Reserve Banks concerning the presidential appointment process and assessments of presidential performance "therefore exist, at least in part, for the Board's use in determining whether to approve the [Reserve Bank] boards' presidential decisions." (Pl. Mem. at 24.) The court agrees; such records would constitute information maintained by Reserve Banks in the performance of functions for the Board of Governors and are thus subject to the FOIA Request.

Second, such records would be subject to FOIA under 12 C.F.R. § 261.2(i)(1)(ii) because they "are maintained for administrative reasons in the regular course of business in official files in . . . any Federal Reserve Bank in connection with the transaction of any official business." See Fox News Network, 601 F.3d at 162 (citing 12 C.F.R. § 261.2(i)(1)(ii)).

    *b. Records Housed for Administrative Reasons at Reserve Banks*

Defendant concedes that there are a set of records housed at the Reserve Banks "for administrative reasons" (which would thus be subject to FOIA under 12 C.F.R. § 261.2(i)(1)(ii)), but argues that it did not need to search those records because they are unlikely to contain responsive material. (See Def. Opp'n at 23.)

Plaintiff disagrees, and points to a declaration by Jennifer J. Johnson, former Secretary of the Board of Governors, submitted in the Fox News litigation, in which she stated that the "categories of Board records housed 'for administrative reasons' in official files at the twelve [Reserve Banks]"—i.e., agency records pursuant to 12 C.F.R. § 261.2(i)(1)(ii)—include "records pertaining to the selection and appointment of [Reserve Bank] directors." (Pl. Mem. at 25 (quoting Decl. of Jennifer J. Johnson ("Johnson Decl.") (Dkt. 41-8, Ex. A) ¶ 17.) The declaration explained that "[t]his category of Board records concerns the qualifications, eligibility, appointment, conduct in office, and suspension or removal of directors of the [Reserve Banks]." (Johnson Decl. ¶ 17.) This declaration, Plaintiff argues, indicates that the Reserve Banks possess agency records responsive to Parts IV and V of the FOIA Request, which sought records relating to the Board's oversight of appointments of Class A, B, and C directors of the Reserve Banks, including, inter alia, '[a]ll directives, instructions, and guidelines communicated by the Board to the regional boards of directors." (Pl. Mem. at 24-25 (quoting FOIA Request at 23).) Defendant counters that the records described in the Johnson Declaration "include documents specific to particular directors such as background information related to qualifications of potential director candidates, . . . and materials executed pursuant to Board policy such as director annual certifications and procurement certifications," which are not responsive to Parts IV and V of the FOIA Request. (Def. Opp'n at 23.)

Defendant's reading of the Johnson Declaration is overly narrow. The Johnson Declaration indicates that the Reserve Banks house "records pertaining to the selection and appointment of [Reserve Bank] directors"—in other words, documents relating to the process of selecting directors. (Johnson Decl. ¶ 17.) This category is thus broader than records merely "pertaining to specific directors," which Defendant contends would be non-responsive. (Def.

Opp'n at 23-24.)  Indeed, such records appear likely to contain information responsive to Parts

IV and V of the FOIA Request.  Regardless, the fact that this category of documents might

include non-responsive information does not lessen Defendant's obligation to search a location

that appears to contain information that would be responsive to the FOIA Request.

* * *

Accordingly, Defendant is ordered to search records at the Reserve Banks that constitute

"Records of the Board" within the meaning of 12 C.F.R. § 261.2(i)(1), including those records

concerning presidential appointments and assessments that might be responsive to Part II of the

FOIA Request, and records relating to the Board's oversight of appointments of Reserve Bank

directors that might be responsive to Parts IV and V of the FOIA Request.  So long as records at

the Reserve Banks satisfy the plain language meaning of § 261.2(i)(1), they qualify as agency

records of the Board and are subject to FOIA requests. See Bloomberg, 649 F. Supp. 2d at 274.

### 3.      Pursuit of Leads

"Agencies are 'obligated to pursue any clear and certain lead' that may relate to the

subject of a FOIA request" and which may arise during its efforts to respond to such request.

Immigrant Def. Project, 208 F. Supp. 3d at 530 (quoting Halpern v. Fed. Bureau of Investigation

181 F.3d 279, 288-89 (2d Cir. 1999)).

Plaintiff contends that, in the course of its search, Defendant turned up multiple leads to

additional documents that would be responsive to the FOIA Request, and in particular to Part II,

subparts (a) and (b), which sought "[a]ll records reflecting any assessments of [each Reserve

Bank president's] performance as a Bank president conducted or commissioned by the Board, or

agents thereof," and "[a]ll records reflecting any assessments of [each Reserve Bank president's]

performance as a Bank president conducted or commissioned by the [relevant Reserve Bank]

board of directors, or agents thereof," respectively, "at any time between December 2010 and February 2016." (Pl. Mem. at 10-11 (quoting FOIA Request at 7).) Based on its review of documents already produced, Plaintiff argues that the Board failed to pursue all clear and certain leads to responsive documents, which can be grouped into the following categories: (1) records of annual assessments of Reserve Bank presidents; (2) various forms of records documenting assessment discussions between Reserve Bank directors and the BAC; and (3) the BAC's "Annotated Bank Evaluations summaries." (Pl. Mem. at 13-14.) The court considers each category in turn.

a.    *Records of Annual Assessments of Reserve Bank Presidents*

First, Plaintiff contends that Defendant failed to pursue a clear and certain lead to annual assessments of Reserve Bank presidents performed by their respective Reserve Bank boards. (Id. at 11.) Plaintiff argues that this lead was provided by the Federal Reserve's Administrative Manual (the "Manual"), which indicates that the directors of each Reserve Bank evaluate the performance of their president annually and that these evaluations are discussed during Reserve Bank evaluation meetings between the members of the BAC and each Reserve Bank's chairman and deputy chairman. (Id. at 11.)

Defendant counters that assessments of Reserve Bank presidents conducted annually by Reserve Bank boards would be records of the individual Reserve Banks and would not be agency records subject to the FOIA Request. (Def. Opp'n at 6-11.) Accordingly, Defendant argues that Plaintiff's belief that additional responsive agency records exist is mere "speculation[]." (Def. Opp'n at 7, 11.)

As explained supra, Part III(A)(2)(b), annual assessments of Reserve Bank presidents qualify as agency records under both subsections (i) and (ii) of 12 C.F.R. § 261(i)(1) because they are created pursuant to the "performance of functions for . . . the Board" and "maintained for administrative reasons in the regular course of business in official files in any division or office of the Board or any Federal Reserve Bank in connection with the transaction of any official business." 12 C.F.R. § 261.2(i)(1)(i)-(ii); see Fox News, 601 F.3d at 161. Indeed, Defendant concedes that Board records housed for administrative reasons at the Reserve Banks—i.e., agency records subject to FOIA—included records concerning "the qualifications, eligibility, appointment, conduct in office, and suspension or removal of directors of the [Reserve Banks]." (Johnson Decl. ¶ 17; see Def. Opp'n at 23.) As Plaintiff points out, Defendant fails to articulate a legal theory for why similar records concerning Reserve Bank presidents (as opposed to directors) should be treated differently. (Pl. Reply at 7.)

Accordingly, and consistent with the court's direction, supra, Part III(A)(2)(b), Defendant must search the Reserve Banks for responsive agency records, including records of annual assessments of Reserve Bank presidents.

     *b.*     *Records Documenting Assessment Discussions Between Reserve Bank Directors and the BAC*

Plaintiff also points to two documents, the Board of Governors' Frequently Asked Questions web page and a summary of the Board's February 19, 2016 meeting, to demonstrate that, during meetings of the BAC, the BAC discusses Reserve Banks' annual assessments of their presidents. (Pl. Mem. at 11-12.) Plaintiff asserts that it is extremely likely there will be some documentation of these meetings such as agendas, meeting minutes, or reports, and that Defendant has not adequately pursued such documents. (Pl. Mem. at 11). The court finds,

however, that materials indicating that such meetings occur do not constitute clear and certain leads that <u>documentation</u> of these meetings exists. Plaintiff's mere speculation that these discussions were documented is insufficient to create a clear and certain lead that Defendant is obligated to follow. The court does not order any further search on these grounds.

c.   *BAC's "Annotated Bank Evaluation summaries"*

Finally, Plaintiff contends that two documents received through the FOIA process point to the existence of "Annotated Bank Evaluations summaries" created annually by the BAC to provide written feedback on the Reserve Banks. (Pl. Mem. at 12-13.) These documents, Plaintiff contends, must be pursued by Defendant because they would be responsive to the FOIA Request. Defendant counters that these evaluation summaries are high-level summaries of the performance of the Reserve Bank as a whole and therefore would not be responsive to Part II of the FOIA request, which seeks documents related to presidential appointments. (Def. Opp'n at 12.) The court disagrees. One of the documents cited by Plaintiff, a letter dated December 17, 2015 to Governor Powell from the board of directors of the Atlanta Reserve Bank, explains that the "Bank Affairs Committee Annotated Bank Evaluations summaries" were considered in their presidential reappointment process. (<u>Id.</u> at 13). Plaintiff has thus presented evidence that at least one Reserve Bank has used these summaries in the presidential reappointment process. This constitutes a clear and certain lead that such Annotated Bank Evaluation summaries are likely to be responsive to Part II of the FOIA Request. Defendant must pursue this lead by searching for the Annotated Bank Evaluation summaries and documents referencing them in connection with presidential appointments and producing any responsive documents.

## B. Documents Withheld Pursuant to Exemptions 5 and 6

Defendant also seeks summary judgment with respect to its withholding of information from seventeen documents under exemptions 5 and 6 of FOIA, which protect, respectively, information that would be protected from disclosure in civil litigation and information the disclosure of which would involve an unwarranted invasion of personal privacy. (See Def. Mem. at 13-39 (citing 5 U.S.C. § 522(b)(5)-(6)).) Plaintiff responds that it "does not agree that Exemptions 5 or 6 apply to any of the documents or portions of documents the Board has identified in its Vaughn index, but for the purposes of this litigation only, Plaintiff is not contesting the withholding of those documents." (Pl. Mem. at 2.) Defendant's uncontested motion for summary judgment in this respect is therefore granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Defendant is directed to take the following actions consistent with this order: (1) search the documents of all members of the Board of Governors from the relevant period; (2) expand the search terms used to search emails and other records to include obvious alternative search terms, including keywords and the names or e-mail addresses of all relevant individuals, or provide sufficient explanations as to why particular proposed searches would constitute an unreasonable burden; (3) search records at the Reserve Banks that constitute "Records of the Board" within the meaning of 12 C.F.R. § 261.2(i)(1), including those records concerning presidential appointments and assessments that might be responsive to Part II of the FOIA Request, records relating to the Board's oversight of appointments of Reserve Bank directors that

might be responsive to Parts IV and V of the FOIA Request, and records of annual assessments of Reserve Bank presidents; and (4) search for the Annotated Bank Evaluation summaries and documents referencing them in connection with presidential appointments. Defendant must then produce all responsive documents not covered by a FOIA exemption.

With respect to Plaintiff's contention that Defendant failed to pursue a "clear and certain lead" to responsive documents provided by the Board of Governors' Frequently Asked Questions web page and a summary of the Board's February 19, 2016 meeting (see supra Part III(A)(3)(b)), the court finds Defendant's search to have been adequate. Defendant's motion for summary judgment is also granted with respect to its withholding of information under exemptions 5 and 6 of FOIA.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     July 15, 2019

NICHOLAS G. GARAUFIS
United States District Judge