UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————
CENTER FOR POPULAR DEMOCRACY,

                              Plaintiff,                    **ORDER**
                                                           **16-CV-5829 (NGG) (VMS)**
              -against-

BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

                              Defendant.
————————————————————————

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Plaintiff Center for Popular Democracy's motion for attorneys' fees and costs from Defendant Board of Governors of the Federal Reserve System pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E). (*See* Mot. for Attys' Fees and Costs (Dkt. 66).) This motion was referred to Magistrate Judge Vera M. Scanlon for a report and recommendation ("R&R"). (*See* Feb. 9, 2021 Order Referring Mot.) Judge Scanlon issued the annexed R&R on August 20, 2021, recommending the court grant in part and deny in part Plaintiff's motion. (*See* R&R (Dkt. 71).)

No party has objected to Judge Scanlon's R&R, and the time to do so has passed. *See* Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014).

Having found none, the court ADOPTS the R&R in full and awards Plaintiff $156,545.93 in fees and costs, for the reasons stated in the R&R.

SO ORDERED.

Dated:      Brooklyn, New York
            September 29, 2021

                                          /s/ Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CENTER FOR POPULAR DEMOCRACY,    :
    :
    Plaintiff,    :
    :    **REPORT AND RECOMMENDATION**
    -against-    :
    :    16 Civ. 5829 (NGG) (VMS)
BOARD OF GOVERNORS OF THE FEDERAL  :
RESERVE SYSTEM,    :
    :
    Defendant.    :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

    Before the Court is Plaintiff Center for Popular Democracy's ("CPD") motion seeking attorneys' fees and costs from Defendant Board of Governors of the Federal Reserve System (the "Board") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).  See ECF No. 66.  The Honorable Nicholas G. Garaufis referred the motion for a report and recommendation to the undersigned.

    For the reasons that follow, this Court respectfully recommends that the District Court grant in part and deny in part CPD's motion for attorneys' fees and costs.

## I.    BACKGROUND

### a.    Factual Background And Procedural History

    On August 5, 2016, CPD submitted a FOIA request (the "FOIA Request") to the Board.  ECF No. 49 at 3.  The FOIA Request was 27-pages long and contained Parts I through VI, with numerous parts to each subsection.  See ECF No. 1-3.  The Board acknowledged receipt of the FOIA Request and extended its time to respond by the statutory maximum of 10 days, to September 19, 2016, but failed to provide a response by that date.  ECF No. 49 at 3-4.  On October 19, 2016, after "having heard nothing further from the Board," CPD filed its complaint

1

challenging the Board's lack of production of documents only as to Parts II through VI of the FOIA Request.  <u>See</u> CPD's Memo., ECF No. 66-1 at 4; Compl., ECF No. 1 ¶ 28.

According to sworn statements from the Board, their search and review process commenced when the FOIA Request was received in August 2016, and the Board's search for documents was well underway by mid-August 2016.  <u>See</u> Board's Memo., ECF No. 67 at 1, 6; Declaration of David G. Caperton ("Caperton Decl."), ECF No. 67-1 ¶ 4.  The Board explains that their untimely response to the FOIA Request was due to the "unusual length and complexity of the Request," given that the "27-page, single-spaced" "FOIA Request [is] comprised of Parts I through VI, each with multiple subparts, totaling 221 separate items."  <u>See</u> Board's Memo. at 1-2, 6-7; Caperton Decl. ¶ 3.  The Board also explained that responding to CPD's FOIA Request involved three separate divisions of the Board, three offices of the Board, numerous Board employees, consultation with subject-matter experts, and a team of attorneys and paralegals.  Board's Memo. at 12; Caperton Decl. ¶ 3.

The Board made its first production of documents to CPD in November 2016, approximately two months after its response was due, and it made additional productions roughly once a month through March 2017.  <u>See</u> ECF No. 49 at 3-4; CPD's Memo. at 4; Board's Memo. at 2.  In March 2017, the Board requested clarification about certain of CPD's requests.  ECF No. 49 at 4; CPD's Memo. at 4; Board's Memo. at 2.  According to sworn statements from the Board, after its initial investigation for documents pursuant to certain subparts, the Board determined those requests were unduly vague and overly broad, and it invited CPD to submit clarifying and narrowing language.  ECF No. 40-4 ¶¶ 61-62.  CPD submitted the clarification in April 2017.  <u>Id.</u> ¶ 62; CPD's Memo. at 4.  The Board produced an additional 562 pages with exempt information redacted under FOIA exemptions 5, 6 and 8 in February 2018, the day

before CPD's summary judgment motion was due.  See Caperton Decl. ¶ 4; Declaration of

Connie K. Chan ("Chan Decl."), ECF No. 66-4 ¶ 5.  In total, the Board produced 1,167 pages of

documents across five productions prior to the filing of CPD's summary judgment motion.  See

Capteron Decl. ¶ 4; Chan Decl. ¶¶ 5-6.

The parties cross-moved for summary judgment.  See ECF Nos. 40-43.  CPD's motion

for summary judgment challenged the adequacy of the Board's searches with respect to three of

the five parts of the FOIA Request about which it had filed the complaint, namely Parts IV, V

and multiple subparts of Part II of the FOIA Request.  See ECF No. 41-1 at 10-25.  On July 16,

2019, the District Court granted CPD's motion to the extent it directed Defendants to

> (1) search the documents of all members of the Board of Governors from
> the relevant period; (2) expand the search terms used to search emails and
> other records to include obvious alternative search terms, including
> keywords and the names or e-mail addresses of all relevant individuals, or
> provide sufficient explanations as to why particular proposed searches
> would constitute an unreasonable burden; (3) search records at the Reserve
> Banks that constitute "Records of the Board" within the meaning of 12
> C.F.R. § 261.2(i)(l), including those records concerning presidential
> appointments and assessments that might be responsive to Part II of the
> FOIA Request, records relating to the Board's oversight of appointments of
> Reserve Bank directors that might be responsive to Parts IV and V of the
> FOIA Request, and records of annual assessments of Reserve Bank
> presidents; [] (4) search for the Annotated Bank Evaluation summaries and
> documents referencing them in connection with presidential appointments[;
> and (5)] produce all responsive documents not covered by a FOIA
> exemption."

ECF No. 49 at 24-25.  The Court denied CPD's motion for summary judgment with respect to its

challenge of the Board's search pursuant to certain subparts of Part II of the FOIA Request, to

the extent it found the Board to have adequately searched for records documenting assessment

discussions about Reserve Bank Presidents between Reserve Bank Directors and the Board of

Governor's Committee on Federal Reserve Bank Affairs ("BAC") at BAC's meetings.  Id. at 22-

23.  The Court granted the Board's motion for summary judgment with respect to the Board's

withholding of seventeen documents under FOIA exemptions 5 and 6, which CPD did not contest at summary judgment.  Id. at 24.

      The parties thereafter had a conference with the Court and filed periodic status reports about the Board's compliance with the Court's July 16, 2019 Order on the cross-motions for summary judgment (the "July 16, 2019 Order").  See ECF Nos. 52-55.  As a result of the Court's July 16, 2019 Order, the Board produced an additional 435 pages over the course of a year.  See CPD's Memo. at 6; Board's Memo. at 3-4; Caperton Decl. ¶ 13; CPD's Reply Memo., ECF No. 68 at 2.  According to Benjamin Dulchin, director of the Fed Up Campaign, CPD's 2020 Data Brief, The Federal Reserve Is a Public Institution but Is it Built to Represent the Public?, June 2020, https://populardemocracy.org/sites/default/files/FedUp-Diversity-Data-Brief_7-20_Web.pdf (the "Data Brief"), relied on the documents released pursuant to the FOIA Request and the July 16, 2019 Order.  Declaration of Benjamin Dulchin ("Dulchin Decl."), ECF No. 66-5 ¶¶ 6-8.  CPD states that the FOIA-produced documents revealed that the Board "makes only minimal efforts to scrutinize seriously those put forward for leadership positions," and that there is "an urgent need to diversify the leadership of the nation's most powerful monetary policymakers, as board members from the business and banking sectors continue to dominate leadership positions at the Fed."  Id.  ¶¶ 7-8.

      On August 17, 2020, the parties informed the Court that the Board had complied with the Order to CPD's satisfaction, and the Court dismissed the action and entered judgment without prejudice to CPD to move for attorneys' fees and litigation costs after the entry of judgment.  See ECF Nos. 55-58.  CPD's instant motion for attorneys' fees and litigation costs followed.  See

ECF No. 66.  The Board opposed, see ECF No. 67, and CPD replied in further support of its

motion, see ECF No. 68.

      **b.**    **Altshuler Berzon LLP**

    CPD offers the following uncontested information about its counsels' qualifications.

Altshuler Berzon LLP ("Altshuler Berzon") is "a boutique law firm located in San Francisco,

California that specializes in complex civil litigation, especially in cases that advance the public

interest."  Declaration of Stephen P. Berzon ("Berzon Decl. I"), ECF No. 66-2 ¶ 6.

    Stephen P. Berzon ("Berzon") is a founding partner of the law firm Altshuler Berzon.  Id.

¶ 1.  He graduated from Harvard Law School in 1968, and prior to founding Altshuler Berzon,

worked at the National Housing and Economic Development Law project of the law school at

the University of California at Berkeley and with the Legal Aid Society of Alameda County; he

also served as Legal Director of the Children's Defense Fund in Washington, D.C.  Id. ¶ 3.

Berzon clerked for the Honorable Alvin B. Rubin of the United States District Court for the

Eastern District of Louisiana.  Id.  Berzon specializes in "major litigation."  Id. ¶ 5.

    Jonathan Weissglass ("Weissglass") is a former partner of Altshuler Berzon who

graduated from Yale Law School in 1994.  Id. ¶ 9.  Prior to working at Altshuler Berzon, he

clerked for the Honorable Myron. H. Thompson of the United States District Court for the

Middle District of Alabama and was a Karpatkin Fellow with the national legal department of

the American Civil Liberties Union in New York.  Id.

    Eric P. Brown ("Brown") is a former partner of Altshuler Berzon who graduated from

Yale Law School in 2008.  Id. ¶ 10.  Prior to joining Altshuler Berzon as an associate, he clerked

for the Honorable Kermit V. Lipez of the United States Court of Appeals for the First Circuit and

for the Honorable Mark L. Wolf of the United States District Court for the District of Massachusetts.  Id.

Connie K. Chan ("Chan") is a partner at Altshuler Berzon who graduated from Yale Law School in 2010.  Id. ¶ 8.  She previously served as a law clerk to the Honorable Michael Daly Hawkins of the United States Court of Appeals for the Ninth Circuit and to the Honorable Lucy H. Koh of the United States District Court for the Northern District of California.  Id.  Prior to rejoining the firm in September 2020, she was a deputy city attorney in the Affirmative Litigation Division of the Los Angeles City Attorney's Office from summer 2018 to summer 2020, and an associate at Altshuler Berzon from 2012 until summer 2018.  Id.

Andrew Kushner ("Kushner") is an associate at Altshuler Berzon and graduated from Stanford Law School in 2015.[1]  Id. ¶ 11.  He previously served as a law clerk to the Honorable Mariano-Florentino Cuéllar of the Supreme Court of California and to the Honorable Stephen Reinhardt of the United States Court of Appeals for the Ninth Circuit.  Id.

CPD's submission for attorneys' fees does not provide any background regarding the law clerks or paralegals who performed work on this matter.  CPD's submission also does not represent that anyone who worked on the matter has previous experience in FOIA litigation.

## II.   ANALYSIS

### a.   Eligibility For An Award Of Attorneys' Fees and Costs

#### i.   Legal Standard

FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the

---

[1] Kushner was an associate at the time Berzon Decl. I was submitted; however, it appears he is no longer an associate at the firm.  See ECF No. 70.

complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  The plaintiff bears the

burden of showing that it substantially prevailed in the FOIA litigation.  See Warren v. Colvin,

744 F.3d 841, 844 (2d Cir. 2014).  The statute provides that "a complainant has substantially

prevailed if the complainant has obtained relief through either—(I) a judicial order . . . or (II) a

voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

Under prong (I), "plaintiffs may be considered prevailing parties for attorney's fees

purposes if they succeed on any significant issue in litigation which achieves some of the benefit

the parties sought in bringing the suit."  Edmonds v. F.B.I., 417 F.3d 1319, 1326 (D.C. Cir.

2005) (quoting Farrar v. Hobby, 506 U.S. 103, 109 (1992)).  "Where the benefit sought includes

the production of records, a judicial order requiring disclosure can qualify as relief sufficient for

a party to substantially prevail under 5 U.S.C. § 552(a)(4)(E)(ii)."  Am. Oversight v. U.S. Dep't

of Justice, 375 F. Supp. 3d 50, 62 (D.D.C. 2019) (internal quotations & alterations omitted).

Under prong (II), referred to as the "catalyst theory" of fee eligibility, a plaintiff must

"show[ ] that the lawsuit was reasonably necessary and the litigation substantially caused the

requested records to be released."  See Schwartz v. U.S. Drug Enf't Admin., No. 13 Civ. 5004

(CBA) (ST), 2019 WL 1299192, at *3 (E.D.N.Y. Mar. 1, 2019) (quoting Burka v. HHS, 142

F.3d 1286, 1288 (D.C. Cir. 1998)), R&R adopted, 2019 WL 1299660 (Mar. 21, 2019).  "[T]he

mere filing of the complaint and the subsequent release of the documents is insufficient to

establish causation."  Grand Canyon Tr. v. Bernhardt, 947 F.3d 94, 97 (D.C. Cir. 2020) (internal

quotation & citation omitted).  "[T]he plaintiff has the burden of showing that it is more probable

than not that the government would not have performed the desired act absent the lawsuit."  Id.

(internal quotation & citation omitted).  Courts have determined that "[t]he causation

requirement is missing when disclosure results not from the suit but from delayed administrative processing." Schwartz, 2019 WL 1299192, at *3 (citing Short v. U.S. Army Corps of Eng'rs, 613 F. Supp. 2d 103, 106 (D.D.C. 2009)).

> **ii.    Plaintiff Substantially Prevailed As To The Court's July 16, 2019 Order, But Not As To The Pre-Order Documents**

CPD contends that it substantially prevailed in this litigation and is eligible for a fee award pursuant to a judicial order, namely, the Court's July 16, 2019 Order requiring the Board to conduct an expanded search of the requested records. See 5 U.S.C. § 552(2)(4)(E)(ii)(I); CPD's Memo. at 8-10; ECF No. 49 at 24-25. The Board concedes that CPD substantially prevailed as to the supplemental searches given the Court's July 16, 2019 Order. See Board's Memo. at 8 ("However, the Board does not dispute that CPD substantially prevailed in one aspect of this litigation – the Order requiring the Board to perform certain supplemental searches in addition to those that the Board had already performed during the administrative processing of the FOIA request"). Given the Board's concession on this point, this Court finds CPD is eligible for fees and costs for work performed with respect to the supplemental searches.

As to the Board's five document productions after CPD commenced this lawsuit and before CPD served its motion for summary judgment, CPD argues the failure to release any records until after CPD filed this litigation, and "at key litigation junctures, including . . . the day before CPD's summary judgment motion was due," establish CPD's eligibility for attorneys' fees and costs under 5 U.S.C. § 552(2)(4)(E)(ii)(II). See CPD's Memo. at 10 n.2. The Board argues that CPD's lawsuit was not the catalyst for the document productions because, as discussed in Section I.a, supra, the Board began searching for the documents prior to the filing of

the complaint, and given the extent and nature of the search, it was not possible to complete it

within the 30 days provided by FOIA.  Board's Memo. at 6-7; Caperton Decl. ¶ 4.

The Congressional intent behind 5 U.S.C. § 552(2)(4)(E)(ii)(II) was to "prevent federal

agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on

the eve of trial to avoid liability for litigation costs."  Warren, 744 F.3d 841 at 845 (citing

Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 525 (D.C. Cir. 2011)).  As it is

CPD's burden to establish that the litigation substantially caused the release of the requested

records, this Court finds CPD has not shown that it prompted the Board's pre-motion

productions via litigation.  The two cases CPD relies on in its motion are distinguishable.  In

Electronic Privacy Information Center v. United States Department of Homeland Security

("DHS"), 811 F. Supp. 2d 216, 222 (D.D.C. 2011), the plaintiffs filed two lawsuits seven months

and six months, respectively, after two FOIA requests that did not receive timely responses from

DHS.  DHS began producing documents one month after the first lawsuit was filed—seven and a

half months after receipt of the first FOIL request—and did "not claim to have conducted any

substantive searches for records prior to the commencement of litigation."  Id. at 232-33.  In

Schwartz v. United States Drug Enforcement Administration, No. 13 Civ. 5004 (CBA) (ST),

2019 WL 1299192, at *3-4 (E.D.N.Y. Mar. 1, 2009), the defendant "only began to release

responsive documents after litigation was initiated over a year following the initial request," and

the defendant's productions often corresponded to specific stages of the litigation, as the

defendant itself admitted it only reviewed and released additional documents in the course of

preparing its summary judgment motion.

Here, CPD filed its lawsuit only two months after its FOIL Request; the Board made its

first production only three months after the FOIL Request; and the Board has provided sworn

9

statements that its search-and-review process commenced when CPD's request was received in

August 2016 and that the search was well underway by mid-August 2016.  See CPD's Memo. at

3-4; Board's Memo. at 1-2, 6-7; Caperton Decl. ¶ 4; Calypso Cargo Ltd. v. U.S. Coast Guard,

850 F. Supp. 2d 1, 4-6 (D.D.C. 2011) (holding that the plaintiff had not shown it had

"substantially prevailed"; the agency began processing the FOIA request before the lawsuit but,

because of the volume of records, released documents months after the complaint was filed),

aff'd, No. 12 Civ. 5165, 2012 WL 10236551 (D.C. Cir. Nov. 1, 2012); Am. Bird Conservancy v.

U.S. Fish & Wildlife Serv., 110 F. Supp. 3d 655, 665-66 (E.D. Va. 2015) (holding that the

plaintiff had not shown it "substantially prevailed" because it had not contradicted an agency

declaration that the lawsuit had not prompted the agency's actions).  CPD highlights the

February 2018 production just before CPD's summary judgment motion was due to suggest that

the lawsuit prompted the production.  The record does not support this conclusion.  As noted

above, supra, Section I.a., this production was made only after CPD narrowed and clarified its

requests such that the Board's production was reasonably timely.  CPD has offered neither

argument nor facts demonstrating why it would be unreasonable for this phase of the search to

have had the timeline it did.

Moreover, prior to CPD's commencement of this lawsuit, the Board never denied CPD's

FOIA Request.  See CPD's Memo. at 4; Chan Decl. ¶ 4; Conservation Force v. Jewell, 160 F.

Supp. 3d 194, 205-06 (D.D.C. 2016) (holding that the plaintiff had not shown it "substantially

prevailed" because, although the agency had produced documents after the plaintiff sued, "[n]o

averments or other facts in the instant record indicate [the agency] only produced [them because

of the] lawsuit," and there was no "about-face" from an initial agency refusal); cf. Miller v. U.S.

Dep't of State, 779 F.2d 1378, 1388-89 (8th Cir. 1985) (holding that the plaintiff "substantially

10

prevailed" where the defendant repeatedly stated it possessed few or no responsive documents until the plaintiff sued); Dorsen v. SEC, 15 F. Supp. 3d 112, 115-16, 119-20 (D.D.C. 2014) (holding that the plaintiff "substantially prevailed" where the agency reversed its position on exemptions after the lawsuit was filed and provided the information).  CPD has not provided contradictory information.

"If rather than the threat of an adverse court order . . . an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed."  Church of Scientology of California v. Harris, 653 F.2d 584, 588 (D.C. Cir. 1981).  "[T]he statute does not suggest that an award of attorney's fees should be automatic [when an agency fails to timely respond to a FOIA request]."  Morley v. Cent. Intel. Agency, 894 F.3d 389, 393 (D.C. Cir. 2018); see id. ("some delay past the 20-day mark is not necessarily so unreasonable in and of itself as to require an award of attorney's fees") (emphasis in original).  As such, this Court finds CPD is not eligible for fees and costs for work performed with respect to the Board's five document productions made prior to the July 16, 2019 Order.

Accordingly, I respectfully recommend that the District Court find CPD substantially prevailed, and is eligible for attorneys' fees and costs, only with respect to the supplemental searches and deny CPD's request for attorneys' fees and costs with respect to the other document productions.

### b.     Entitlement To An Award Of Attorneys' Fees And Costs

### i.     Legal Standard

The Court's conclusion that CPD is eligible for fees "does not end the inquiry—the Court must still decide whether [the plaintiff] is entitled to [fees]."  Am. Oversight, 375 F. Supp. 3d at

64 (citing Gerhard v. Fed. Bureau of Prisons, 258 F. Supp. 3d 159, 167 (D.D.C. 2017)).  In

determining whether an eligible FOIA plaintiff has shown that she is entitled to an award, the

court weighs four factors: (1) the public benefit derived from the case; (2) the commercial

benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the

agency had a reasonable basis for withholding requested information.  See Pietrangelo v. U.S.

Army, 568 F.3d 341, 343 (2d Cir. 2009); New York Times Co. v. Cent. Intel. Agency, 251 F.

Supp. 3d 710, 713 (S.D.N.Y. 2017).

      Regarding the first factor, in order to have a public benefit, the agency records at issue

must be "likely to add to the fund of information that citizens use in making vital political

choices."  Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 218 F. Supp. 3d 27, 44

(D.D.C. 2016) (quotation & citation omitted).  This requires consideration of both the effect of

the litigation for which fees are requested and the public value of the information derived from

the case.  See Davy v. Cent. Intel. Agency, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  The second

and third factors—the commercial benefit to the plaintiff and the nature of plaintiff's interest—

are often considered together.  See New York Times, 251 F. Supp. 3d at 713.  "The second factor

considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's

interest in the records."  Davy, 550 F.3d at 1160. "These factors also favor non-profit

organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown

government information—precisely the activity that FOIA's fees provision seeks to

promote.'"  Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 69

(D.D.C. 2013) (quoting Davy, 550 F.3d at 1160).  The fourth factor—the agency's reasonable

basis for withholding requested information—"considers whether the agency's opposition to

disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its

12

opposition to a valid claim or otherwise engaged in obdurate behavior." Davy, 550 F.3d at 1162 (internal quotations & citations omitted). "If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." Id. (internal quotations & citations omitted).

### ii.    Public Benefit

The first factor, the public benefit, weighs in favor of an award to CPD. In determining whether a FOIA suit resulted in a public benefit, courts consider "'both the effect of the litigation for which fees are requested and the potential public value of the information sought.'" Campaign for Responsible Transplantation v. U.S. Food & Drug Admin., 593 F. Supp. 2d 236, 241 (D.D.C. 2009) (quoting Davy, 550 F.3d at 1159). Applying both inquiries to the instant matter, CPD established it is entitled to fees under the public-benefit factor.

Here, "the effect of the litigation" component of the first factor favors CPD's fee entitlement, as CPD's lawsuit resulted in the release of 435 pages of responsive documents. See Morley v. Cent. Intel. Agency, 810 F.3d 841, 844 (D.C. Cir. 2016) ("'the effect of the litigation' inquiry is properly understood as asking simply whether the litigation has caused the release of requested documents, without which the requester cannot be said to have substantially prevailed").

Regarding the second component of the first factor, CPD argues that the disclosure of documents, pursuant to the FOIA Request at issue here, "add[ed] to the fund of information that citizens may use in making political choices" because (1) the documents requested would show a lack of diversity in the leadership at the Federal Reserve, in violation of the Federal Reserve Act of 1977—an issue of public concern; (2) various news media outlets reported on the lack of

diversity and transparency in the Federal Reserve's leadership;[2] and (3) the information sought

provided insight on the criteria and processes the Federal Reserve applies to leadership positions.

See CPD's Memo. at 12-13; Elec. Privacy Info. Ctr., 218 F. Supp. at 44 (quotation & citation

omitted); Dulchin Decl. ¶¶ 6-8.

      Relying on Cotton v. Heyman, 63 F.3d 1115 (D.C. Cir. 1995), the Board argues that the

Court must evaluate whether the specific documents released yielded a public benefit.[3]  Board's

Memo. at 9.  The Board asserts that the documents released here did not yield a public benefit.

Id. at 9-11.  Here, CPD, a non-profit agency, sought records for the purpose of "understand[ing]

the Fed's process for evaluating and appointing leaders at the Reserve Banks" and "advocating

for more transparency and diversity at the leadership of the Fed."  Dulchin Decl. ¶ 4.  The Board

emphasizes that CPD's 2020 Data Brief, and the news articles CPD cites, did not cite to any of

the released documents, suggesting that the FOIA responses were not used for the public benefit

via the Data Brief or the news coverage.  Board's Memo. at 9-10.

      The mere fact that CPD's Data Brief and the other news articles did not specifically cite

to the FOIA documents does not mean that the documents lacked any public benefit value.  In

Morley v. Central Intelligence Agency, 810 F.3d 841, 843 (D.C. Cir. 2016), the court found that

---

[2] "In deciding whether released documents are of import or irrelevance to the public, courts often look to whether the litigation or released information has inspired media coverage or congressional attention.  See, e.g., Elec. Priv. Info. Ctr., 811 F. Supp. 2d at 234 & n.11 (citing news articles and congressional hearing as evidence of public benefit); Playboy Enters., Inc. v. U.S. Customs Serv., 959 F. Supp. 11, 16 (D.D.C. 1997) (considering the "degree of publicity" sparked by plaintiff's action); STS Energy Partners LP v. Fed. Energy Regul. Comm'n, 214 F. Supp. 3d 66, 69 (D.D.C. 2016) (collecting cases).

[3] The Board's reliance on Cotton, however, is misplaced, as the plaintiff in that case received only two documents for her self-proclaimed purpose of facilitating her own employment discrimination suit.  Cotton, 63 F.3d at 1120; see id. ("[w]hen a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate") (citation omitted).

documents released to a journalist, pursuant to a FOIA request, yielded a public benefit despite

that the documents "reveal[ed] little, if anything, about President Kennedy's assassination."  The

court relied on Davy, explaining that the public-benefit factor requires an assessment of "'the

potential public value of the information sought,' not the public value of the information

received."  Id. at 844 (quoting Davy, 550 F.3d at 1159).  The court further explained that "the

public-benefit factor requires an ex ante assessment of the potential public value of the

information requested, with little or no regard to whether any documents supplied prove to

advance the public interest."  Id. (emphasis in original).  Thus, the document request in Morley,

"had potential public value" because the documents sought may "have (marginally) supported

one of the hypotheses swirling around the assassination."  Id. at 844-45.

As in Morley, the Court considers the ex ante value of CPD's requests to the Board.  The

documents requested by CPD (1) related to a matter of great public concern—whether the

Federal Reserve abides by the Federal Reserve Act by appointing diverse members to leadership

roles and (2) had the potential to illustrate the criteria and processes used by the Federal Reserve

to appoint such leadership.  See CPD's Memo. at 12-13.  As noted above, supra, Section I.a,

Benjamin Dulchin explained how the documents released pursuant to the FOIA Request and the

Court's July 16, 2019 Order provided the public with information about the lack of diversity in

the Board's leadership.  Although the CPD Data Brief may not have specifically cited to any of

the FOIA documents, the documents had the potential to reveal the methods used by the Federal

Reserve in hiring or not hiring diverse leadership and consequently "revealed what the Board did

not possess: evidence of a commitment to diversity in selecting its leadership."  CPD's Reply

Memo. at 4 (emphasis in original); see Dulchin Decl. ¶ 8.  Of particular relevance in this regard

were the documents released pursuant to the July 16, 2019 Order that dealt with the issue of the

Class B director selection process, which CPD addressed in its Data Brief.  See CPD's Reply

Memo. at 4.  The documents requested had the potential to provide and did provide the public

with information on this issue.  As stated in Morley, "if it's plausible ex ante that a request has a

decent chance of yielding a public benefit, the public-benefit analysis ends there."  Morley, 810

F.3d at 844.

> ### iii.   Commercial Benefit And Nature Of Plaintiff's Interest In The Records Sought

The second and third factors—commercial benefit and interest in the records—are often

considered together; in this case, they favor CPD.  See New York Times, 251 F. Supp. 3d at 713.

The Board contends that the second and third factors do not advance CPD's entitlement to fees

because CPD has not demonstrated a "quantifiable public benefit."  Board's Memo. at 11.  The

Court has already found that CPD meets the requirements of the first factor, supra, Section

II.b.ii; therefore, the Court will proceed to evaluate the merits of the second and third factors,

which the Board has otherwise not addressed.

CPD contends that as a non-profit organization "advocating for a more diverse and

inclusive leadership at the Fed," it meets the second and third factors.  CPD's Memo. at 14.  CPD

explains that its interest in the FOIA Request was to "further[] its overall mission of promoting

economic and racial justice."  Id.  The Court agrees.  These factors "tend to 'favor non-profit

organizations . . . which aim to ferret out and make public worthwhile, previously unknown

government information—precisely the activity that FOIA's fees provision seeks to promote.'"

People for the Ethical Treatment of Animals v. Nat'l Inst. of Health, 130 F. Supp. 3d 156, 165

(D.D.C. 2015) (quoting Elec. Priv. Info. Ctr., 999 F. Supp. 2d at 69) (further citation omitted).

CPD filed its FOIA Request to "gather[] information of potential interest to a segment of the

public" and "distribute[d] that work to an audience" through its Data Brief.  See Davy, 550 F.3d

at 1161-62 (internal quotation & citation omitted).  The record does not raise any doubt that CPD

filed the FOIA Request and pursued litigation for a reason other than "to increase the public fund

of knowledge about a matter of public concern."  Id. at 1162.  For the foregoing reasons, this

Court finds that CPD meets the second and third factors of eligibility for an award of fees.

### iv.    The Reasonableness Of Defendants' Withholdings

The fourth and final factor "'considers whether the agency's opposition to disclosure had

a reasonable basis in law' and 'whether the agency had not been recalcitrant in its opposition to a

valid claim or otherwise engaged in obdurate behavior.'"  Poitras v. Dep't of Homeland Sec.,

No. 15 Civ. 1091 (BAH), 2019 WL 1569561, at *9 (D.D.C. Apr. 11, 2019) (quoting McKinley v.

Fed. Hous. Fin. Agency, 739 F.3d 707, 712 (D.C. Cir. 2014)) (further citation omitted).  The

defendant bears the burden of showing "that it had a[ ] colorable or reasonable basis for not

disclosing the material until after [the plaintiff] filed suit."  Davy, 550 F.3d at 1163.  "If the

Government's position is correct as a matter of law, that will be dispositive. . . . If an agency's

position is merely colorable, the fourth factor will not be dispositive but instead will be weighed

along with other relevant considerations in the entitlement calculus."  Elec. Priv. Info. Ctr. v.

Fed. Trade Comm'n, No. 18 Civ. 942 (TJK) (DAR), 2020 WL 3248983, at *7 (D.D.C. June 16,

2020) (quoting Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d 225, 237 (D.D.C.

2012) (internal citations omitted)).  "The purpose of the final factor is 'to disincentivize

requesters from complaining about reasonable withholdings while incentivizing the government

to promptly turn over—before litigation is required—any documents that it ought not withhold.'"

Poitras, 2019 WL 1569561, at *9 (citing Davy, 550 F.3d at 1166).

CPD argues that it prevails on the fourth factor because the Court's July 16, 2019 Order

is proof "that the Board had no reasonable legal basis for resisting CPD's FOIA request."  See

17

CPD's Memo. at 15.  The District Court rejected, among other arguments, the Board's

contention that it had conducted a reasonable search for documents in locations "most likely" to

contain responsive documents and ordered it to expand its search to include records pertaining to

other members of the Board, records of annual assessments of Reserve Bank presidents, and

Annotated Bank Evaluation summaries and documents.  ECF No. 49 at 10-24.  Although CPD

did not prevail on some of its claims,[4] the Court granted most of CPD's motion.  On balance, this

Court finds factor four weighs in favor of CPD as to the documents sought on summary

judgment because the Court rejected the Board's contention that it had conducted a reasonable

search for responsive documents as to many of CPD's requests.  See Rosenfeld v. U.S. Dep't of

Justice, 904 F. Supp. 2d 988, 1000-01 (N.D. Cal. 2012) (finding that an order for summary

judgment in favor of the plaintiff weighed in favor of awarding attorney's fees under the fourth

factor); STS Energy Partners, 214 F. Supp. 3d at 72 (government agency had no "reasonable

basis in law" for resisting disclosure, in part because court denied its motion for summary

judgment).

Considering all four factors together, the Court finds that CPD is both eligible and

entitled to attorney's fees under FOIA's fee-shifting provision for the work related to the

supplemental searches.

---

[4] The Court did not order any further searches of materials for records documenting assessment
discussions about Reserve Bank Presidents because "Plaintiff's mere speculation that these
discussions were documented is insufficient to create a clear and certain lead that Defendant is
obligated to follow."  ECF No. 49 at 22-23.

c.      **Reasonableness Of Plaintiff's Requested Fees Award**

i.      **Legal Standard**

Once a court determines that a FOIA plaintiff is both eligible for and entitled to an award, it must determine a reasonable award.  See New York Times, 251 F. Supp. 3d at 713.  In this Circuit, the lodestar, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case, creates a presumptively reasonable fee.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008).  In calculating the presumptively reasonable fee, the court looks to what a reasonable, paying client would be willing to pay, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  A party seeking an award of attorneys' fees must submit contemporaneous time records that indicate "for each attorney, the date, the hours expended, and the nature of the work done."  N.Y. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  The plaintiff bears the burden of establishing the reasonableness and the necessity of the hours spent and the rates charged.  See Elec. Privacy Info. Ctr., 218 F. Supp. at 38.

In support of this motion, CPD provided declarations and the relevant billing records.  See Berzon Decl. I; Reply Declaration of Stephen P. Berzon ("Berzon Decl. II"), ECF No. 68-1.

ii.      **Reasonableness Of Rates**

In assessing the reasonableness of an attorney's hourly rate, the court must consider whether the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, expertise and reputation.  See Blum Stenson, 465 U.S. 886, 895 n.11 (1984).  The relevant community for a fee application presented

19

to the district court is usually the forum district.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 369 F.3d 91, 96 (2d Cir. 2004); Ethelberth v. Choice Sec. Co., No. 12 Civ. 4856 (PKC) (VMS), 2016 WL 11469536, at *12 (E.D.N.Y. Aug. 5, 2016), R&R adopted, Order dated Aug. 23, 2016.  "[T]he rates used by the [district] court to calculate the lodestar amount should be current rather than historic hourly rates."  Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 210 n.11 (2d Cir. 2005) (internal quotations & citations omitted).

CPD requests the following hourly rates for their attorneys, law clerk and paralegal:

| Timekeeper | Requested Rate |
|------------|----------------|
| Berzon | $1,050.00 |
| Weissglass | $960.00 |
| Brown | $860.00 |
| Chan | $750.00 |
| Kushner | $600.00 |
| Law Clerk | $285.00 |
| Paralegal | $285.00 |

See Berzon Decl. I ¶ 20; Berzon Decl. II ¶ 4.

The requested hourly rates are not in line with the prevailing rates in the Eastern District of New York or even in the Southern District of New York.  See, e.g., Schwartz, 2019 WL 1299192, at *9 (awarding $500.00 hourly fee to partner litigating FOIA litigation, and listing awards of between $500.00 and $655.00 per hour for partners handling complex litigation); Nat'l Env't Safety Co., Inc. v. Katz, No. 18 Civ. 2161 (JMA) (GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (award based upon $500.00-$600.00 hourly rate to partners, $300.00 hourly rate for associates, and $100.00 hourly rate for paralegals litigating breach of contract case); Freddy Quintanila v. Good Eats Meal Plan Corp., No. 18 Civ. 4350 (JMA) (GRB), 2019 WL 1936731, at *2 (E.D.N.Y. May 1, 2019) (noting that courts generally award hourly rates ranging from $300.00-$400.00 for experienced attorneys litigating wage disputes); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Cali

20

Enters., Inc., No. 18 Civ. 3556 (JFB) (AYS), 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019)

(noting propriety of awards of between $200.00 and $325.00 per hour for senior associates and

$100.00 to $200.00 for junior associates litigating ERISA collection matter); Reiter v. Maxi-

Aids, Inc., No. 14 Civ. 3712 (SJF) (GRB), 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019)

(noting propriety of awarding up to $450.00 per hour for partners, up to $325.00 for associates,

and up to $100.00 for paralegals in fee shifting cases); HVT, Inc. v. Port. Auth. of N.Y. & N.J.,

No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *3 (E.D.N.Y. Nov. 21, 2018) (awarding

hourly rate of $525.00 to attorneys with over twenty years of experience in specific subject area);

McLaughlin v. IDT Energy, No. 14 Civ. 4107 (ENV) (RML), 2018 WL 3642627, at *17

(E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be:

"$550 for partners/equity owners with more than thirty years of experience, $500 for

partners/equity owners with more than fifteen years of experience, $450 for partners/equity

owners with more than ten years of experience, $400 for senior associates/associates with more

than ten years of experience, $350 for senior associates/associates with six to nine years of

experience, $300 for associates with three to five years of experience, $250 for associates with

fewer than three years of experience"), R&R adopted in part & rejected in part due to settlement,

Order dated Oct. 18, 2018.

A 40% discount on all rates proposed by Altshuler Berzon for attorneys and law clerks

would bring the rates of the timekeepers within the ranges granted in this District for complex

litigation.  See Schwartz, 2019 WL 1299192, at *9.  A reduction to $100.00 per hour for

paralegal work is also appropriate given the prevailing rates in this District.  See, e.g., Nat'l

Env't Safety, 2019 WL 1994049, at *2; Reiter, 2019 WL 1641306, at *4.  These discounts to the

hourly rates account for the undocumented FOIA expertise by the Altshuler Berzon timekeepers.

21

See Schwartz, 2019 WL 1299192, at *9.  This Court respectfully recommends the following

revised hourly rates for the Altshuler Berzon timekeepers:

| Timekeeper | Revised Rate |
|------------|--------------|
| Berzon | $630.00 |
| Weissglass | $575.00 |
| Brown | $515.00 |
| Chan | $450.00 |
| Kushner | $360.00 |
| Law Clerk | $170.00 |
| Paralegal | $100.00 |

### iii.    Reasonableness Of Hours Expended

The Court must also determine the reasonableness of the hours expended in the course of

the litigation.  "The party seeking attorney's fees also bears the burden of establishing that the

number of hours for which compensation is sought is reasonable."  Custodio v. Am. Chain Link

& Constr., Inc., No. 08 Civ. 7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13,

2014) (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d

Cir. 1994) (further citations omitted)).  When reviewing an application for attorneys' fees, the

Court should exclude "excessive, redundant, or otherwise unnecessary" hours.  See Hensley v.

Eckerhart, 461 U.S. 424, 434 (1983).  "[I]n dealing with such surplusage, the court has discretion

simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of

trimming fat from a fee application.'"  Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.

1998) (quoting N.Y. Ass'n for Retarded Children, 711 F.2d at 1146).  It is not necessary for the

Court to "analyze every itemized instance of work conducted by [the] attorneys."  Elec. Privacy

Info. Ctr., 218 F. Supp. 3d at 50.  "The Court's role in awarding fees is to do 'rough justice' not

engage in a picayune 'battle of the ledgers.'"  Id. (quoting Elec. Privacy Info. Ctr. v. Dep't of

Homeland Sec., 197 F. Supp. 3d 290, 294-96 (D.D.C. 2016)).

In its motion, CPD requests compensation for 465.8 hours of work.  Berzon Decl. II ¶ 4.
CPD argues this amount is reasonable for tasks performed in the over four years of prosecuting
this action, including conducting factual and legal investigation prior to filing the complaint,
drafting the complaint, reviewing the Board's productions, summary judgment briefing, case
management, monitoring the Board's compliance with the July 16, 2019 Order, and
communications with CPD regarding the litigation.  See CPD's Memo. at 22.  The hours
requested in CPD's fees motion already includes a reduction of over 90 hours in the exercise of
Altshuler Berzon's billing judgment to account for redundancies, inefficiencies or other time not
appropriately billed to a client.  See CPD's Memo. at 23.  The Board argues that the number of
hours are excessive for numerous reasons, including that the hours billed are redundant,
unnecessary or are otherwise not compensable under FOIA.  See Board's Memo. at 13-18.

As this Court determined that CPD substantially prevailed only with respect to the
documents produced subsequent to the July 16, 2019 Order, this Court reviews the time
expended in this litigation to award fees for those tasks that were necessary to securing the
supplemental searches.  As noted above, the Board's voluntary productions significantly
narrowed the matters in dispute.

CPD requests fees for 19.8 hours for telephone conferences, strategy conferences, and
legal research for "potential FOIA litigation" as well as a conference with CPD regarding its
FOIA requests, all before submitting the FOIA Request to the Board.  See Berzon Decl. II at 6.
The Board argues none of these hours is compensable as they cannot be attributed to this
litigation.  Board's Memo. at 14.  CPD does not refute, and therefore, concedes, this point.  See
CPD's Reply Memo. at 7-9.  Given these hours were all incurred before CPD even served its

FOIA Request, none of the 19.8 hours was necessary for CPD to prevail on its summary

judgment motion; therefore the 19.8 hours are not compensable.[5]

CPD requests fees for 30.5 hours for the time between submitting its FOIA Request

through filing the complaint, which accounts for time reviewing correspondence with and

drafting correspondence to the Board related to the FOIA Request, researching and drafting the

complaint, and editing a press release. See Berzon Decl. II at 6-7. The Board argues that 3.1 of

these hours are not compensable because they are for administrative work, and neither is the 1.6

hours for editing press releases, some of which falls in this period. Board's Memo. at 14, 17.

The Board has not identified the specific billing entries it claims relate to administrative work.

CPD argues that administrative work that takes place shortly before the filing of the complaint

and relates to drafting the complaint is compensable, and moreover, that "much of the time being

challenged reflects legal research in anticipation of litigation . . . which isn't even administrative

time." See CPD's Reply Memo. at 8 & n.8; New York Times, 251 F. Supp. 3d at 716. The

Court finds that 3.1 hours is a reasonable amount of time for administrative tasks. See New

York Times, 251 F. Supp. 3d at 716 (noting "only four" hours of administrative work done at the

pre-complaint stage reasonable). CPD does not respond to the Board's contention that time

billed for editing press releases is not compensable. See CPD's Reply Memo. at 7-9. The Court

deducts the hours that relate to editing press releases, finding that none of that time is

compensable.[6] See Germain v. Cty. of Suffolk, 672 F. Supp. 2d 319, 327 (E.D.N.Y. 2009)

---

[5] This results in a reduction of 8.6 hours from Chan's time and 11.2 hours from law clerk time.

[6] Two of the billing entries the Board includes in the total of 1.6 hours for work on press releases
also include other tasks. See Berzon Decl. II at 8 (04/05/17 entry for CKC of 0.60, 04/06/17
entry for CKC of 0.20). Because these two billing entries do not list how much time was
allocated to each task, the Court deducts half of the time as time not compensable for work on

(finding that time spent to draft a press release cannot be recovered on a motion for attorneys' fees).

Although some of the work CPD performed in relation to drafting and filing the complaint helped lead to prevailing at summary judgment and receiving additional documents from the supplemental searches, not all of this work was necessary to achieve these results.  CPD spent time working on, in essence, an "overbroad" complaint—CPD sought to secure a broader range of documents than necessary through judicial intervention.  The complaint sought documents pursuant to Parts II through VI of the FOIA Request at the same time that the Board was in the process of reviewing and searching for responsive documents.  The Board then voluntarily produced the majority of documents CPD sought in its complaint.  CPD's summary judgment motion—the part of this lawsuit on which CPD substantially prevailed—only requested that the Court order the Board to conduct supplemental searches aimed at finding additional documents responsive to Parts II, IV and V of the FOIA Request.  Therefore, I find a 50% reduction to the 30.5 hours appropriate to account for work that was premature and unnecessary while the Board was in the process of searching for documents to respond to CPD's FOIA Request.[7]

After the filing of the complaint, and aside from the time CPD spent preparing for summary judgment discussed below, CPD spent minimal time on case management and court conferences, legal research, as well as reviewing and analyzing the Board's interim document

---

press releases.  This results in a total reduction of 0.2 hours from Weissglass's time and 1.0 hours from Chan's time.

[7] This results in a reduction of 0.35 hours from Berzon's time, 0.9 hours from Weissglass's time, (inclusive of the 0.2 hours of time reduced for press release work), 0.15 hours from Brown's time, 12.9 hours from Chan's time (inclusive of 0.4 out of the 1.0 hours of time reduced for press release work), and 0.95 hours from paralegal time.

productions and responses, and engaging in correspondence regarding the same.  See Berzon

Decl. II at 7-11.  This Court finds the time expended on these tasks to be reasonable.  See, e.g.,

Schwartz, 2019 WL 1299192, at *10 (finding 20 hours spent on document review compensable);

New York Times, 251 F. Supp. 3d at 716 ("It would seem critical to the prosecution of a FOIA

lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding

during the course of its FOIA litigation.") (alteration, quotation & citation omitted).

The Board challenges the reasonableness of the 241 hours CPD expended on summary-

judgment briefing, arguing that it was excessive.  Board's Memo. at 15-16.  CPD responds that,

given the complexity and sheer number of topics at issue at summary judgment, the hours sought

are not excessive.  CPD's Reply Memo. at 9.  Indeed, the Board itself argues the FOIA Request

was particularly detailed and unusually long and complex.  See Board's Memo. at 1-2, 6-7.

Likewise, the summary judgment briefing dealt with a particularly detailed FOIA dispute, and

the briefing was extensive and thorough.  The Board filed its motion for summary judgment first,

which was 40 pages long and included an 18-page Rule 56.1 Statement, two declarations, and a

combined total of 12 exhibits.  See ECF No. 40.  CPD then cross-moved for summary judgment

and opposed the Board's motion for summary judgment, submitting a 25-page brief, a 12-page

Rule 56.1 Statement, a 33-page Response to the Board's Rule 56.1 Statement, and two

declarations with a combined total of 12 exhibits.  See ECF No. 41.  The Board's opposition to

CPD's motion and reply in further support of its own motion was 24 pages long and attached a

37-page Response to CPD's Rule 56.1 Statement, an 87-page consolidated Rule 56.1 Statement,

two declarations and one exhibit.  See ECF No. 42.  CPD then filed its 23-page reply in further

support of its own motion along with a 55-page consolidated Rule 56.1 Statement.  See ECF No.

43.  The Board criticizes CPD for work done prior to the exchange of the Board's motion for

summary judgment, see Board's Memo. at 15, but given that there were two summary judgment motions, it was reasonable for CPD to begin working on its own independent of receiving the Board's. Moreover, the staffing on the summary judgment work appears to be efficient—the majority of research and drafting of CPD's cross-motion was done by a law clerk and Chan, who was a senior associate at the time. See Berzon Decl. I ¶ 8; Berzon Decl. II at 9-11. When Chan left Altshuler Berzon in 2018, Brown, a junior partner, took over her responsibilities to handle the reply with assistance from Kushner, an associate in his third year of practice after law school at the time. Berzon Decl. I ¶ 10, 13; Berzon Decl. II at 11-12. Partners Berzon and Weissglass barely billed any time to the motions. See Berzon Decl. II at 9-12.

To put it in perspective, the time CPD expended on two summary judgment motions is equivalent to two attorneys working three 40-hour work weeks. This Court agrees with CPD that 241 hours for the summary judgment briefing here is not excessive.[8] See Michigan Immigrant Rts. Ctr. v. Dep't of Homeland Sec., No. 16 Civ. 14192, 2021 WL 855468, at *12-13 (E.D. Mich. Mar. 8, 2021) (finding 200 hours on FOIA cross-motion for summary judgment not unreasonable "given the significance of the relief at stake in these motions" and "in light of the well-researched, thorough, and high-quality briefing produced in connection with this issue"); see also City of Riverside v. Rivera, 477 U.S. 561, 581 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quotation & citation omitted); cf. Urban Air Initiative, Inc. v. EPA, 442 F. Supp. 3d 301, 325-26 (D.D.C. 2020) (finding 260.5 hours of work on cross-motion for

---

[8] The Board also argues that CPD's hours expended on summary judgment should be reduced due to counsels' "inexperience" with FOIA, see Board's Memo. at 16, but the Court need not do so as "the lack of [documented] FOIA experience by [CPD's] attorneys [was] already incorporated into the recommended 40% discount of attorney billing rates." See Schwartz, 2019 WL 1299192, at *10.

summary judgment in FOIA litigation excessive where 65.4 hours spent on "redactions memorandum" created for an issue on which plaintiffs ultimately did not prevail, additional 90.2 hours spent on drafting plaintiffs' cross-motion for summary judgment, and 104.9 hours spent on plaintiffs' "largely repetitive" reply).

The Board challenges time spent after submission of the FOIA Request on internal strategizing and conferences (at least 17.2 hours) and communicating with the client (at least 36.5 hours), stating CPD has not established that all this time was necessary.  See Board's Memo. at 16-17.  CPD counters that this type of work is compensable in attorneys' fees motions, and that these amounts are reasonable given the length of this litigation.  See CPD's Reply Memo. at 8-9.  Such time seems eminently reasonable to the Court given the strategic need to have the client's input on materials to request and pursue on the motion as the client was the author of the Data Brief.  The Court also finds the time spent on internal strategizing and communicating with the client reasonable, considering both the length of this litigation, and that some of this time has already been deducted based on the 50% reduction in time between submitting the FOIA Request and the filing of the complaint.  See HVT, 2018 WL 6079932, at *6-7 (finding 50 hours reasonable amount of time for pre-filing and strategizing work, and awarding fees for 23.20 hours of correspondence time for three years of litigation).

The Board also challenges CPD's request for 65.7 hours-worth of attorneys' fees for time expended after the July 16, 2019 Order.  The Board argues that "the overall number of hours is excessive and suggests that [] unnecessary or excessive services were reported. . . . [T]his post-Order time includes approximately 35 hours expended with respect to the fee request."  Board's Memo. at 18.  The Board does not elaborate what about these 65.7 hours seems unnecessary or excessive, other than pointing out the "approximately 35" hours attributable to the instant

motion.  The Court has reviewed the time entries for this period and generally finds them to be

reasonable.  The Court also finds that approximately 35 hours of work on a fees' motion and

approximately 27 hours on a reply is reasonable particularly given the level of detail and analysis

provided.  Cf. Schwartz, 2019 WL 1299192, at *11 (finding 90 hours on a fee motion excessive

given that the motion for summary judgment took only 150 hours but required far more briefing

and preparation; 10% reduction); Urb. Air Initiative, 442 F. Supp. 3d at 327 (finding

approximately 90 hours on fee motion excessive).

      The Board challenges the nine hours of travel time billed by Chan at her full hourly rate,

and challenges 0.9 hours billed by Brown in July 2018 in relation to CPD's audit.  See Board's

Memo. at 15 n.9, 17 & n.16.  CPD has recalculated Chan's travel time at half her rate and

removed the 0.9 hours for the audit.  See CPD's Reply Memo. at 7 n.7.  These issues are thus

moot.[9]  As to the remainder of line items the Board challenges as unnecessary, see Board's

Memo. at 17-18, the Court finds the Board's arguments unpersuasive.  The 6.5 hours of research

by Law Clerk "50" into a legal argument CPD did not end up making on summary judgment is

reasonable.  See Hensley, 461 U.S. at 431.  The 2 hours Paralegal "91" spent cite checking a

letter and 4.3 hours spent corresponding with the client regarding the summary-judgment

briefing and holding short strategy conferences regarding next steps and substitution of local

counsel are minimal and reasonable.

---

[9] As discussed infra, Section II.d.ii, the Court declines to award CPD costs for Chan's travel to
New York.  Therefore, regardless of the correction to Chan's billing rate for her travel time,
because her billing entries do not indicate she did any work on the matter during her 9 hours of
travel time, the Court deducts these 9 hours from Chan's time.

iv.     **Summary Of Reasonable Attorneys' Fees**

In light of the foregoing, the Court respectfully recommends that CPD's reasonable fees

be calculated as follows:

| Timekeeper | Original Hours | **Revised Hours** | Original Rate | **Revised Rate** | **Lodestar** |
|---|---|---|---|---|---|
| Berzon | 11.6 | **11.25** | $1050.00 | **$630.00** | **$7,087.50** |
| Weissglass | 7.5 | **6.6** | $960.00 | **$575.00** | **$3,795.00** |
| Brown | 51.2 | **51.05** | $860.00 | **$515.00** | **$26,290.75** |
| Chan | 155 | **123.9** | $750.00 | **$450.00** | **$55,755.00** |
| Kushner | 121.8 | **121.8** | $600.00 | **$360.00** | **$43,848.00** |
| Law Clerk | 96.5 | **85.3** | $285.00 | **$170.00** | **$14,501.00** |
| Paralegal | 22.2 | **21.25** | $285.00 | **$100.00** | **$2,125.00** |
| | | | | | |
| **TOTAL** | | **421.15** | | | **$153,402.25** |

d.     **Plaintiff's Requested Costs**

i.     **Legal Standard**

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are

recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  The party

seeking to recover costs "bears the burden of adequately documenting and itemizing the costs

requested."  Ganci v. U.S. Limousine Serv. Ltd., No. 10 Civ. 3027 (JFB) (AKT), 2015 WL

1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05 Civ. 985 (RRM)

(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)).  While CPD, as the Board points

out in its opposition, has not submitted receipts for the costs sought, CPD documented the costs

in a detailed ledger report that "indicates the date, description, and amount of each requested

cost."  Schwartz, 2019 WL 1299192, at *11.  This Court finds such documentation to be

adequate.

ii.      **Reasonableness of Costs**

CPD seeks $3,788.83 in litigation costs.  Berzon Decl. II ¶ 5.  The Court finds costs for

service of process ($201.50), court filing fee ($400.00), telephone charges ($36.12), postage

($25.27), copying and printing ($1,097.26), PACER ($78.10) and courier fees ($25.13)

compensable.  See Houston v. Cotter, 234 F. Supp. 3d 392, 412 (E.D.N.Y. 2017) ("An award of

costs . . . is generally limited to . . . items such as photocopying, travel, and telephone costs"

(quoting Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987)); Hanover Ins. Co. v. D'Angelo,

No. 13 Civ. 4301, 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) ("Court filing fees,

process servers, printing and photocopying, messenger services, postage, telephone costs . . . are

generally recoverable.") (quotation & citation omitted), R&R adopted, 2018 WL 2727878 (June

6, 2018).  The Court also finds costs for online legal research ($654.74) compensable given

Altshuler Berzon's representation that research fees are normally billed to its clients.  See Berzon

Decl. I ¶ 21; Arbor Hill, 369 F.3d at 98.  Likewise, CPD's request for $600.00 in pro hac vice

fees and $25.26 in certificate of good standing fees is compensable.  See Osterweil v. Bartlett, 92

F.Supp.3d 14, 37 (N.D.N.Y. 2015) ("district courts in this Circuit often award attorney's fees and

costs associated with pro hac vice admission") (citation omitted).

The Court declines to award costs for Chan's travel to New York.  CPD seeks $645.15

for plane tickets, ticket change fees, cab fare and subway fares.  See Berzon Decl. II at 23.

While "local transportation" costs may "ordinarily be recovered as part of a fee award,"

Westport Ins. Corp. v. Hamilton Wharton Grp., Inc., 483 F. App'x 599, 605 (2d Cir. 2012)

(quotation & citation omitted), "'[t]ravel costs may be denied where a party chooses out-of-

district attorneys,'" as CPD did here.  Congregation Rabbinical Coll. of Tartikov, Inc. v. Village

of Pomona, 188 F. Supp. 3d 333, 345 (S.D.N.Y. 2016) (quoting Pall Corp. v. 3M Purification,

Inc., No. 03 Civ. 92, 2012 WL 1979297, at *8 (E.D.N.Y. June 1, 2012)) (alteration in original).

"[T]he Second Circuit has instructed that defendants should not be penalized for a plaintiff's

choice of out-of-district counsel, unless 'the case required special expertise beyond the

competence of forum district law firms.'" Congregation Rabbinical Coll., 188 F. Supp. 3d at 345

(quoting Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009))

(additional citations omitted); see also Vining v. District of Columbia, 198 A.3d 738, 750-51

(D.C. 2018) (analyzing cases under various fee-shifting provisions and holding that under D.C.'s

FOIA fee-shifting provision, that "absent a showing that hiring an out-of-state attorney was

necessary . . . cross-country travel expenses are unlikely to be reasonable if suitable local counsel

. . . were willing and able to take the case").  The Altshuler Berzon timekeepers do not offer

evidence of any special expertise in FOIA litigation—and even if they had, there are

undoubtedly attorneys within this District who specialize in FOIA and numerous Eastern and

Southern District litigators who could have handled this case on behalf of CPD.  As out-of-

district counsel was not necessary in this action, CPD should not be awarded costs with respect

to their attorneys' travel from their offices in California to New York City, where the Court and

CPD are located.  See Congregation Rabbinical Coll., 188 F. Supp. 3d at 345 ("There is no

reason why Defendants should incur greater liability simply because Plaintiffs retained out-of-

district attorneys.").

       Thus, the Court respectfully recommends that CPD's reasonable costs are $3,143.68.

### III.             CONCLUSION

For the foregoing reasons, it is respectfully recommended that the District Court grant in part and deny in part Plaintiff's motion with an Order:

- Finding that Plaintiff substantially prevailed with respect to the documents produced from supplemental searches.  See Section II.a, supra.

- Finding that Plaintiff is entitled to an award with respect to the documents produced from supplemental searches.  See Section II.b, supra.

- Awarding Plaintiff $156,545.93 in fees and costs, which represents the sum of:

    o  Plaintiff's attorney, law clerk and paralegal fees in the amount of $153,402.25, which is a modification of the attorney, law clerk and paralegal lodestars that Plaintiff requested as discussed by this Court in Section II.c, supra, and

    o  Plaintiff's costs in the amount of $3,143.68, which is a modification of the compensable reimbursements that Plaintiff requested as discussed by this Court in Section II.d, supra.

### IV.             OBJECTIONS

A copy of this report and recommendation is being provided to the parties via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008)

("[F]ailure to object timely to a [magistrate judge's] report operates as a waiver of any further judicial review of the [magistrate judge]'s decision.") (quotation & citation omitted).

Dated:  Brooklyn, New York
        August 20, 2021

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

34